IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GEORGIA SOUTHWESTERN RAILROAD, INC., a Corporation, ) ) ) | |
| *Plaintiff,* ) ) | |
| vs. ) ) | CASE NO. 2:06cv3-B |
| AMERICUS C. MITCHELL, JR., ) an Individual, ) ) | |
| *Defendant.* ) | *ORAL ARGUMENT REQUESTED* |

## MEMORANDUM BRIEF AND ARGUMENT IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant AMERICUS C. MITCHELL, JR. (Hereinafter, "Mitchell"), the defendant herein, and submits the following in reply to Plaintiff, GEORGIA SOUTHWESTERN RAILROAD'S (Hereinafter, "GSR") response to this Defendant's *Motion for Summary Judgment*:

### SUMMARY OF ARGUMENT IN REPLY

1) As Lessee to Norfolk Southern Railroad, who holds legal title to the subject railroad trestle, the GSR is not the real party in interest to bring this action as contemplated by FRCP 17. GSR's failure to disclose Norfolk Southern's interest could subject this defendant to duplicative, multiple, and/or varying judgments between the present and potential subsequent litigation and is, therefore, due to be dismissed.

2) GRS's failure to keep the subject trestle free of vegetation and other

incendiary materials proximately contributed to the fire at issue. Thus, it is barred from recovery.

     3)     As the trestle has an ascertainable market value, the applicable measure of damages is diminution in value or the value at the time of the injury. Alabama law holds that replacement cost is a contingent measure of damages to be applied only when calculations such as the market value formula are "inapplicable or otherwise fail to compensate the owner of a destroyed structure adequately for his injury". *Tuscaloosa County v. Jim Thomas Forrester Consultants*, Inc., 613 So.2d 322 at 326 (Ala. 1992).

## I. REAL PARTY IN INTEREST

**AS LESSEE TO NORFOLK SOUTHERN RAILROAD WHO HOLDS LEGAL TITLE TO THE SUBJECT RAILROAD TRESTLE, THE GSR IS NOT THE REAL PARTY IN INTEREST TO BRING THIS ACTION AS CONTEMPLATED BY FRCP 17.**

The absence of the Norfolk Southern Railroad, who is the entity that holds legal title to the subject rail line, as a party to this action subjects this defendant to the potential for duplicative, multiple, and/or varying judgments between the present and potential subsequent litigation. Although the lease agreement cited by plaintiff purports to charge it with the responsibility of maintaining the rail line, it is wholly undisputed that it is the Norfolk Southern Railroad, and not the Georgia Southwestern Railroad, Inc., that holds legal title to the rail line, and the subject spur, and thus, is the only proper party to bring this action under Rule 17 of the *Federal Rules of Civil Procedure*.

Being unaware of the fact that anyone other than the GSR held legal title to the White Oak Line until after the deposition of the GSR's 30(b)(6) corporate representative,

this defendant had no opportunity to address and defend potential subsequent claims brought by Norfolk Southern, as the time to amend the pleadings and to join parties had already expired. Furthermore, the existence of Norfolk Southern's interest in the subject rail line should have been raised in the plaintiff's initial disclosures. Thus, allowing the present litigation to proceed with the now impossibility of adjudicating all potential claims of all potential parties arising from this transaction or occurrence would greatly prejudice this defendant, in that it could subject this defendant to duplicative, multiple, or varying judgments between this and any potential subsequent litigation.

Therefore, this action is due to be dismissed insofar as it has neither been initiated nor prosecuted in the name of the real party in interest, as contemplated by Rule 17(a). However, should this Court find that this case is to proceed in the absence of Norfolk Southern, this defendant prays for a declaration by this Court that an adjudication on the merits of the present litigation shall serve as an final adjudication on the merits of any potential claims by Norfolk Southern Railroad or any other entity not disclosed to these defendants who may have an interest in the outcome of the present litigation or in any potential claim arising from the occurrence made the basis of this suit.

## II. Contributory Negligence

**GRS's failure to keep the subject trestle free of vegetation and other incendiary materials proximately contributed to the fire at issue. Thus, it is barred from recovery.**

The affidavit and deposition testimony of defendant Americus C. Mitchell, Jr. firmly establishes that the GSR's failure to maintain the right-of-way on and around the subject

railroad trestle was a contributing cause of the fire at issue.

According to the affidavit of Mr. Mitchell, the maintenance activities conducted on the spur during recent years had declined after the closing of the Louisiana Pacific plant, which GSR serviced using the White Oak Spur. (*Mitchell Aff., p 3*) As a result, vegetation, consisting of mainly Kudzu, had been allowed to accumulate at the base of the subject trestle, grow onto its support members, and climb onto the track portion of the trestle itself (*Mitchell Aff., p. 4*). These vines were allowed to proliferate to such an extent that they encroached upon the Mitchell property (*Mitchell Aff., p. 6*). According to Mr. Mitchell, during the winter, the previous summer's growth left a thick accumulation of dead vegetative material on and around the trestle (*Mitchell Aff., p. 5*). This is what eventually led to the spreading of the fire in this case and provided sufficient fuel to set the subject trestle ablaze (*Mitchell Aff., pp. 7-8*).

In his deposition, Mr. Mitchell testified that:

> "A. [I]n my opinion what caused the fire was the tremendous growth of kudzu that had enveloped the old trestle. In years past the maintenance crews would prevent that from happening. The right-of-way that they owned, they would police it and they would control it by equipment they had on the flat cars. They had a type of Bush Hog that would clear the right-of-way, and they also had a tank truck with boom sprayers that would spray herbicide around the right-of-way to prevent any growth of kudzu and flammable grasses that normally grow around the trestle."

*Dep. of A. Mitchell*, pp. 43-44.

Mr. Mitchell further testified that, once the Louisiana Pacific plant closed, which the GSR serviced using the White Oak Line, there was little maintenance activity that he

observed along the spur:

> "Q. With regard to the maintenance of the area around the trestle and on the White Oak spur in general, would you say there was more or less maintenance done on the spur after Louisiana Pacific closed?
>
> A. I'd say there was little or no maintenance on it after that date as far as I know.
>
> Q. So there was less after the Louisiana Pacific plant closed?
>
> A. Uh-huh (positive response).
>
> Q. After that time did you ever see any tank sprayers or cutting equipment out there?
>
> A. No."

*Dep. of A. Mitchell*, pp. 55-56.

Not only was the right-of-way not properly maintained, the trestle itself was in need of repair:

> "Q. If you would, tell me a little bit about the condition of the trestle prior to the fire.
>
> A. The trestle was in bad shape.....those cross ties were in such bad shape that they would cause an injury.
>
> Q. So were there rotten cross ties on there?
>
> A. Yeah.
>
> Q. Were there any cross ties missing?
>
> A. I don't know if there was any missing, but they were all in bad shape.
>
> Q. So in your estimation, you didn't feel like the kids should be riding the four-wheelers across there?

> A. Huh-uh (negative response)."
>
> . . . . .
>
> Q. So there were cross ties that had actually rotted out and they had begun to fall apart?
>
> A. That's true.

*Dep. of A. Mitchell*, pp. 56-57 .

It should be noted that plaintiffs' reliance on Alabama Code, § 9-13-273, does not bar this defendant from raising contributory negligence as a defense. Plaintiff's argument is couched in such a fashion so as to imply that any violation of the statute renders a defendant strictly liable. The statute does not impose strict liability and does not preclude the pleading of contributory negligence as a defense.

From the foregoing, it is clear that GSR's failure to properly maintain the White Oak Line and, thus, the subject trestle, was a contributing factor to the occurrence of this fire. Thus, this defendant may not be held liable for injuries caused by the GSR's own negligence, and this defendant is entitled to judgment as a matter of law.

## III. M<span style="font-variant:small-caps">easure of</span> D<span style="font-variant:small-caps">amages</span>

**AS THE TRESTLE HAS AN ASCERTAINABLE MARKET VALUE, THE APPLICABLE MEASURE OF DAMAGES IS DIMINUTION IN VALUE OR THE VALUE AT THE TIME OF THE INJURY.**

As the railroad trestle at issue is not a "public structure" and has an ascertainable market value, determinable as a pro rata share of the purchase price that the GSR was willing to pay for the White Oak Spur along with any depreciation of the trestle itself, the

proper measure of damages is either diminution in value or the value of the structure at the time of the injury. In the *Tuscaloosa County* case, cited by plaintiff in brief, the Alabama Supreme Court made it clear that the replacement cost should be a contingent measure of damages to be applied only when calculations such as the market value formula are "inapplicable or otherwise fail to compensate the owner of a destroyed structure adequately for his injury". *Tuscaloosa County v. Jim Thomas Forrester Consultants*, Inc., 613 So.2d 322 at 326 (Ala. 1992). Furthermore, the plaintiff's argument that the trestle at issue is unmarketable must fail, as the plaintiff itself is in the process of purchasing the White Oak Line, and thus, established the very "market value" that it claims is impossible to ascertain.

The issue of the proper measure of damages will turn on this Court's interpretation of the Alabama Supreme Court's 1992 opinion in *Tuscaloosa County v. Jim Thomas Forestry Consultants*, Inc., 613 So.2d 322 at 326 (Ala. 1992). While this defendant agrees that the *Tuscaloosa County* case correctly states when replacement cost is warranted as the proper measure of damages, three distinguishing elements of the instant case render the reasoning in that case regarding replacement cost inapplicable: 1) Unlike the bridge in *Tuscaloosa County*, there can be no dispute that the trestle at issue is not a "public structure," 2) Also unlike the bridge in *Tuscaloosa County*, the subject trestle has a "market value" as evidenced by the fact that the GSR is in the process of purchasing the White Oak Line, and such market value is a pro rata share of the purchase price, considering any depreciation of the trestle itself  3) The *Tuscaloosa County* case involved the application of a statute that expressly authorized the awarding of replacement cost as the proper measure of damages

regarding the destruction of highway structures; there is no such statute that applies here.

Plaintiff's reliance on the *Tuscaloosa County v. Jim Thomas Forestry Consultants* case is misplaced insofar as the bridge on a public roadway in *Tuscaloosa County* was a "public structure", owned by the taxpayers of Tuscaloosa County, and held no market value. Here, there can be no dispute that GSR agreed to purchase the White Oak Line for its own economic gain, with its activities having no nexus to the furthering of the "public good." Thus, there is no basis to support a finding that the trestle is a "public structure" as that term is employed in the *Tuscaloosa County* case.

In the instant case, plaintiff's contention that the railroad trestle at issue, is an unmarketable structure is self defeating in that the plaintiff itself is in the process of purchasing this rail line at the present time:

> "Another provision of the lease and option to purchase agreement provides the lessee an option to purchase the White Oak Line. Plaintiff Georgia Southwestern Railroad, Inc. has exercised that option and is in the process of purchasing the White Oak Line from Norfolk Southern Railway Company."

(*Dep. of D. Smoot*, p. 6) (*Plaintiff's Response to Defendant's Motion from Summary Judgment*, p. 4.)

As discussed by the *Tuscaloosa County* court:

> "The 'value' measure, that is, 'the difference in the value of the property immediately before and immediately after the injury to it, is one method used to calculate the damages recoverable for damage to structures attached to the land. Dan Dobbs, Handbook of Law Remedy, § 5.1, 1975. Characteristically, however, it is <u>linked to the concept of *market* value</u>, Dobbs, *supra*, at 315-318, which is the amount that 'a willing buyer . . . would pay a willing seller.'" (Emphasis supplied).

*Tuscaloosa County*, at p. 324.

In this case, the GSR was a "willing buyer" and the Norfolk Southern Railroad, from whom GSR is in the process of purchasing the White Oak Line, is a "willing seller." Therefore, plaintiff's contention that the trestle is an unmarketable structure, even considered in totality with the rail line itself, is hollow and fails of its own purpose. The GSR has, obviously, determined that the rail line and therefore, the trestle itself, has some specific market value, as evidenced by its willingness to purchase the line for a sum certain. In essence, the GSR itself established the market value to be the purchase price that it was willing to pay.

To take the concept of market value one step further in determining the value of the subject trestle, the market value of the trestle itself is determinable as a function of a pro rata share of the purchase price of the rail line, considered along with any depreciation assignable due to the age and compromised condition of the trestle. There is no doubt that, in making its decision regarding the purchase price that it would be willing to pay for the rail line, the GSR undertook some analysis as to the trestle's utility as a part of the rail line and balanced this against the trestle's age, structural integrity and the likelihood of future capital expenditures to keep the trestle in an operable capacity. Sound business practices dictate that the GSR would have undertaken this analysis prior to any agreement to purchase the rail line. Thus, this defendant agrees with the plaintiff's statement that the "trestle's worth can only be viewed in the totality of the rail line of which it is a part," and that worth is a pro rata share of the purchase price of the rail line, considered along with any assignable depreciation regarding the trestle.

As mentioned above, the *Tuscaloosa County* case involved the application of a statute that expressly authorized the awarding of replacement cost as the proper measure of damages regarding the destruction of highway structures. *Tuscaloosa County* at 323; Alabama Code, 1975, § 32-5-9. There is no such statute that is applicable here. As the *Tuscaloosa County* case was a matter of first impression, the Alabama Supreme Court looked to the law of other states to determine the proper measure of damages. In this regard, the Court reviewed a Kansas case involving damage to a highway structure in interpreting a statute similar to Alabama Code § 32-5-9. *Tuscaloosa County* at 326.

In the Kansas case, the court held that:

> "the amount recoverable under the statute was the amount of the 'actual replacement cost of the illegally destroyed structure.' The court reasoned that the intention of its legislature was, because of the inherent difficulties involved in assigning a value to highway structures, "to specifically designate the liability therefore [sic] was all damages sustained."

*Tuscaloosa County* at 326, citing *State Highway Comm'n v. Stadler*, 158 Kan. 289, 297 (Kan.1944).

Applying the reasoning of the Kansas case to the *Tuscaloosa County* case, the *Tuscaloosa County* court opined:

> "We find this construction persuasive. Structures within the scope of statutes such as Alabama Code § 32-5-9 and the one involved in *Stadler* are commonly provided by <u>governmental entities</u> that, and acting within statutorily prescribed powers and duties, deem them necessary to the public good. See *James v. Conecuh County*, 79 Ala. 304, 307 (1885) ('county commissioners are charged with the 'duty to provide for keeping necessary bridges in repair' . . . We conclude that the measure of damages comporting most closely to the language of § 32-5-9(a), which expressly imposes liability for *all* damage

>which said highway or structure may sustain, is the cost of repair or replacement."

From the foregoing, it is abundantly clear that the Court felt that the statutory language of § 32-5-9(a) imposing liability "for *all* damage which said structure or highway may sustain" supported a finding that the cost of replacement was the proper measure of damages. However, in this case, the trestle at issue is not a "public structure" but is an interest in land being purchased by the plaintiff for the purposes of expanding its operations as a short-line railroad company. Furthermore, there is no statutory cause of action assigning damages in the amount of replacement costs applicable to this case, as there was in *Tuscaloosa County*. Thus, it is clear that the facts of this case fall within the general rule that the measure of damages to real property is the diminution in value or the value of the structure at the time of the injury.

As the White Oak Line and the trestle at issue do, in fact, have an ascertainable market value, which value was set by the price that the plaintiff was willing to pay for the line, diminution in value or the value of the structure at the time of the injury should apply here as the appropriate measure of damages. Thus, as this is a question of law, this defendant prays for a determination by this Honorable Court that the measure of damages properly applicable to this case is either diminution in value of the structure or its value at the time of the injury.

## CONCLUSION

THE PARTIES REQUEST THAT THIS HONORABLE COURT HEAR ORAL ARGUMENT ON THE ISSUES PRESENTED HEREIN. This defendant is entitled to summary judgment on the following grounds:

1) The GSR is not the real party in interest to prosecute this action as contemplated by Rule 17 of the *Federal Rules of Civil Procedure.*

2) GRS's failure to keep the subject trestle free of vegetation and other incendiary materials proximately contributed to the fire at issue. Thus, it is barred from recovery.

3) As the trestle at issue has an ascertainable market value, Alabama law dictates that the proper measure of damages is diminution in value of the structure or its value at the time of the fire.

WHEREFORE, THE PREMISES CONSIDERED, this defendant submits that there are no genuine issues of material fact to be decided herein and that it is entitled to judgment as a matter of law.

Respectfully submitted,

_____
DAVID E. ALLRED
D. CRAIG ALLRED
Attorneys for Defendant
AMERICUS C. MITCHELL, JR.

OF COUNSEL:

DAVID E. ALLRED, P.C.
Post Office Box 241594
Montgomery, Alabama 36124-1594
Telephone:  (334) 396-9200
Facsimile:  (334) 396-9977
E-mail:  dallred@allredpclaw.com
         callred@allredpclaw.com

### CERTIFICATE OF SERVICE

I hereby certify that I have this 15th day of October, 2006 filed the foregoing *Memorandum Brief and Argument in Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment* with the Clerk of the Court for the United States District Court for the Middle District of Alabama, Northern Division, using the CM/ECF system, which will send notification of such filing to:

Adrian D. Johnson, Esq.
PARNELL & CRUM, P.A.
Post Office Box 2189
Montgomery, Alabama 36102-2189

_____
OF COUNSEL