IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GEORGIA SOUTHWESTERN RAILROAD, INC., a Corporation, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| vs. | ) CASE NO. 2:06cv3-B ) |
| AMERICUS C. MITCHELL, JR., an Individual, | ) ) ) |
| *Defendant.* | ) ) ) |

## TRIAL BRIEF OF
## DEFENDANT AMERICUS C. MITCHELL, JR.

NOW COMES **AMERICUS C. MITCHELL, JR**, the defendant in the above-styled case, and submits the following Trial Brief and Memorandum of Law regarding the issues that will be addressed at the trial of this matter.

### CONTRIBUTORY NEGLIGENCE

The Georgia Southwestern Railroad's (hereinafter, "GSR") maintenance of a fire hazard on its own property in allowing the prolific growth of vegetative vines on and around its railroad trestle was contributory negligence as a matter of law. Furthermore, it was foreseeable by GSR that allowing dead vegetative material to accumulate could result in a fire, whether that fire was man-made or was ignited by lightning or a spark from one of its trains. Conversely, it was wholly unforeseeable by Mitchell that a

controlled burn conducted on his property, contained by several man-made and natural fire breaks, would ever cross his property line. Thus, this defendant may not be held liable for a fire resulting from the plaintiff's lack of due care in maintaining the right-of-way, which event was unforeseeable by Mitchell at the time of the controlled burn.

The affidavit and deposition testimony of defendant Americus C. Mitchell, Jr. firmly establishes that the GSR's failure to maintain the right-of-way on and around the subject railroad trestle was a contributing cause of the fire at issue.

According to the affidavit of Mr. Mitchell, the maintenance activities conducted on the spur during recent years had declined after the closing of the Louisiana Pacific plant, which GSR serviced using the White Oak Spur. (*Mitchell Aff., p 3*) As a result, vegetation, consisting of mainly Kudzu, had been allowed to accumulate at the base of the subject trestle, grow onto its support members, and climb onto the track portion of the trestle itself (*Mitchell Aff., p. 4*). These vines were allowed to proliferate to such an extent that they encroached upon the Mitchell property (*Mitchell Aff., p. 6*). According to Mr. Mitchell, during the winter, the previous summer's growth left a thick accumulation of dead vegetative material on and around the trestle (*Mitchell Aff., p. 5*). This is what eventually led to the spreading of the fire in this case and provided sufficient fuel to set the subject trestle ablaze (*Mitchell Aff., pp. 7-8*).

In his deposition, Mr. Mitchell testified that:

> "A.    [I]n my opinion what caused the fire was the tremendous growth of kudzu that had enveloped the old trestle. In years past the maintenance crews would prevent that from happening. The right-of-

> way that they owned, they would police it and they
> would control it by equipment they had on the flat
> cars.  They had a type of Bush Hog that would clear
> the right-of-way, and they also had a tank truck with
> boom sprayers that would spray herbicide around the
> right-of-way to prevent any growth of kudzu and
> flammable grasses that normally grow around the
> trestle."

*Dep. of A. Mitchell*, pp. 43-44.

Mr. Mitchell further testified that, once the Louisiana Pacific plant closed, which

the GSR serviced using the White Oak Line, there was little maintenance activity that he

observed along the spur:

> "Q.   With regard to the maintenance of the area around
> the trestle and on the White Oak spur in general,
> would you say there was more or less maintenance
> done on the spur after Louisiana Pacific closed?
>
> A.    I'd say there was little or no maintenance on it after
> that date as far as I know.
>
> Q.    So there was less after the Louisiana Pacific plant
> closed?
>
> A.    Uh-huh (positive response).
>
> Q.    After that time did you ever see any tank sprayers or
> cutting equipment out there?
>
> A.    No."

*Dep. of A. Mitchell*, pp. 55-56.

Not only was the right-of-way not properly maintained, the trestle itself was in

need of repair:

> "Q.   If you would, tell me a little bit about the condition of

the trestle prior to the fire.

A.    The trestle was in bad shape.....those cross ties were in
       such bad shape that they would cause an injury.

Q.    So were there rotten cross ties on there?

A.    Yeah.

Q.    Were there any cross ties missing?

A.    I don't know if there was any missing, but they were
       all in bad shape.

Q.    So in your estimation, you didn't feel like the kids
       should be riding the four-wheelers across there?

A.    Huh-uh (negative response)."

.  .  .  .  .

Q.    So there were cross ties that had actually rotted out
       and they had begun to fall apart?

A.    That's true.

*Dep. of A. Mitchell*, pp. 56-57 .

The essential inquiry in determining whether a person starting a fire on his

premises has been guilty of negligence is whether the person starting the fire used such

care, caution, and diligence as a prudent and reasonable person would have exercised

under the same or similar circumstances.  *Central of Georgia Railway Co. v. Griffin*, 36

Ala.App. 292, 55 So.2d 218, 220 (Ala.Civ.App. 1951).  "The mere proof of the damage or

destruction of the property by fire does not of itself authorize an inference of

negligence."  *Robinson v. Cowan*, 158 Ala. 603, 47 So. 1018 (Ala. 1908).  "The obligation is

on the plaintiff to aver and prove to the requisite degree of satisfaction that the defendant, in the burning, as was his right, debris on his land, with a view to its clearing and cultivation, or in the precautions taken for the control of the fire so set, was negligent. *Id.*" Furthermore, it is the well settled law of this state that a railroad company is liable for negligence when a fire results from permitting dry and combustible materials to accumulate on the railroad's right-of-way. *Southern Railway Co. v. Johnston*, 22 Ala.App. 629, 118 So. 680, 681.

To sustain a finding of negligence, the damages allegedly suffered must be "a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury." *Vines v. Plantation Motor Lodge*, 336 So.2d 1338, 1339 (Ala. 1976).

In the instant case, the negligence of GSR in failing to keep the subject railroad trestle free of vegetation and other debris was a contributing factor in the occurrence of the fire. Thus, it may not recover for damages that were a result of its own contributory negligence.

According to the affidavit of Defendant Americus C. Mitchell, Jr., the maintenance activities conducted on the spur during recent years had declined after the closing of the Louisiana Pacific plant, which GSR serviced using the White Oak Spur. (*Mitchell Aff., p 3*) As a result, vegetation, consisting of mainly Kudzu, had been allowed to accumulate at the base of the subject trestle, grow onto its support members, and climb onto the track portion of the trestle itself (*Mitchell Aff., p. 4*). These vines were

-5-

allowed to proliferate to such an extent that they encroached upon the Mitchell property (*Mitchell Aff., p. 6*). According to Mr. Mitchell, during the winter, the previous summer's growth left a thick accumulation of dead vegetative material on and around the trestle (*Mitchell Aff., p. 5*). This is what eventually led to the spreading of the fire in this case and provided sufficient fuel to set the subject trestle ablaze (*Mitchell Aff., pp. 7-8*).

From the foregoing recitation of events, it is clear that GSR simply failed to maintain the right-of-way on and around the subject trestle in recent years. Apparently, the issue of whether GSR would maintain the White Oak Spur in the absence of any regularly conducted operations collapsed into the question of whether it would be economical to do so. In any event, irrespective of whether its decision was based on economics, the area around the trestle was not properly maintained and, based on the testimony submitted in the affidavit of Mr. Mitchell, this was a contributing cause of the fire. Furthermore, Terry Small, the President of GSR acknowledged in his deposition that it was not Mitchell's responsibility to maintain the right-of-way on and around the trestle to prevent a fire hazard (*Dep. of T. Small, p. 43*).

It should be noted that plaintiffs' reliance on Alabama Code, § 9-13-273, does not bar this defendant from raising contributory negligence as a defense. Plaintiff's argument is couched in such a fashion so as to imply that any violation of the statute renders a defendant strictly liable. The statute does not impose strict liability and does not preclude the pleading of contributory negligence as a defense.

From the foregoing, it is clear that GSR's failure to properly maintain the White

Oak Line and, thus, the subject trestle, was a contributing factor to the occurrence of this fire. Thus, this defendant may not be held liable for injuries caused by the GSR's own negligence.

## MEASURE OF DAMAGES

Defendant Mitchell disputes that the plaintiff is entitled to the full cost of repair should the jury find that he is liable for the damage to the subject trestle. There will be evidence presented at trial that the trestle was in need of repair prior to the fire made the basis of this suit. Assuming liability is affixed upon Mr. Mitchell, the jury should be allowed to consider the evidence of the trestle's deteriorated condition prior to the fire to allow an informed and equitable award of damages. If the jury were not allowed to consider such evidence, a windfall for the plaintiff could result as the plaintiff could be awarded the full cost of repair where the evidence will show that the trestle was in dire need of repair prior to the fire. Furthermore, assuming this Court determines that the cost of repair is the proper measure of damages in this case, should a jury find that the cost of repairs to the trestle exceeds its diminution in value, then the plaintiff's recovery should be limited to the diminished value of the trestle.

An Alabama Supreme Court opinion released on May 11, 2007 provides a thorough examination of the law regarding the measure of damages for injury to real property and, furthermore, provides a legal basis for the relief requested by defendant Mitchell. *Poffenbarger v. Merit Energy Co.*, 2007 WL 1378333 (Ala.). *Poffenbarger* involved

the remediation of private property in Citronelle, Alabama, owned by the

Poffenbarger's, after a gas pipeline owned by defendant Merit Energy Company

ruptured causing an extensive accumulation of oil on the property. *Poffenbarger* at 1.

Regarding damages, the evidence in the trial court was that the cost of remediation

would be $2,608,740, while the pre and post contamination appraisals of the property

revealed that its value remained constant at $1,200 per acre. *Id.* Although the Court

noted that the issue of measure of damages when the cost to remediate exceeds the

diminution in value was one of first impression, it also noted that the underlying

premise regarding damages to real property is that the plaintiff is entitled to the

amount necessary to restore the property to the condition in which it was before the

injury. *Id.* at 3.

In examining the history of Alabama cases regarding the measure of damages to

real property, the Court highlighted numerous rules of law that are of particular

significance to the instant case:

> "The general principle upon which compensation for injuries to real
> property is given, is that the plaintiff should be reimbursed <u>to the extent
> of the injury to the property</u>......If the injury is easily reparable, the cost of
> repairing may be recovered. But it must be shown that the repairs were
> reasonable; and if the cost of repairing the injury is greater than the
> diminution in market value of the land, the latter is always the true
> measure of damages. Strictly speaking, therefore, **the cost of repairs is not
> the measure of damages, but only evidence of the amount of damages.**"

> *Poffenbarger* at 4, citing 3 Theodore Sedgwick, *A Treatise on the Measure of
> Damages* § 932 (8th ed. 1891) (emphasis added; footnotes omitted).

> ....

"Where the injury is temporary and may be abated, the **recovery is limited** to the amount necessary to put the land *in as good a condition as it was before the injury*, and, in addition, compensation for any loss of use during the time it was rendered unfit for occupancy."

*Poffenbarger* at 6, citing 6 Seymour D. Thompson, *Commentaries on the Law of Negligence* § 7229 (1905) (emphasis added; footnotes omitted).

....

"For the purposes of measuring damages for injury to real property, a diminution in value may be determined by the cost of repairing the damage, provided that that cost <u>does not exceed the former value</u> of the property and provided also that the repairs <u>do not enhance the value</u> of the property over what it was *before* it was damaged."

*Poffenbarger* at 9, citing 22 Am.Jur.2d *Damages* § 265 (2003)

"[w]hen the reasonable cost of repairing the injury by restoring the premises is *less* than the damage done such cost measures the damages; but if the cost of restoration is *more* than the diminished value the latter generally determines the amount of the recovery."

*Poffenbarger* at 5, citing 4 *Sutherland on Damages* §§ 1017-18 (emphasis added; footnotes omitted).

Based on the above-cited case law, which is the latest pronouncement of the Alabama Supreme Court on the measure of damages to real property, the plaintiff is not entitled to the full cost of repair. Such a holding would result in a windfall to the plaintiff who would enjoy the benefit of a brand new railroad trestle where the evidence will show that the trestle was in dire need of repair. Thus, defendant Mitchell asks that this Court allow the jury to consider evidence of the trestle's deteriorated state prior to the fire in making a determination regarding damages. Furthermore, should the jury find that the cost of repair exceeds the diminished value of the trestle, defendant

Mitchell asks that the plaintiff's damages be limited to the diminution in value based on the above-cited case law. * *A copy of the Poffenbarger opinion is attached.*

## LOSS OF USE

Defendant Mitchell adopts and incorporates by reference as though set out fully herein its argument submitted in support of its Motion In Limine to exclude evidence of plaintiff's damages regarding loss of use filed on May 21, 2007.

WHEREFORE, THE PREMISES CONSIDERED, defendant Mitchell moves this Court to make the above-requested findings of law regarding the trial of this matter.

Respectfully submitted,

/s/ D. Craig Allred
DAVID E. ALLRED
D. CRAIG ALLRED
Attorneys for Defendant
AMERICUS C. MITCHELL, JR.

OF COUNSEL:

DAVID E. ALLRED, P.C.
Post Office Box 241594
Montgomery, Alabama 36124-1594
Telephone:    (334) 396-9200
Facsimile:    (334) 396-9977
E-mail:    dallred@allredpclaw.com
                callred@allredpclaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 21st day of May, 2007 filed the foregoing *Trial Brief*

with the Clerk of the Court for the United States District Court for the Middle District of

Alabama, Northern Division, using the CM/ECF system, which will send notification of

such filing to:

> Adrian D. Johnson, Esq.
> PARNELL & CRUM, P.A.
> Post Office Box 2189
> Montgomery, Alabama 36102-2189

> /s/ D. Craig Allred
> OF COUNSEL

Westlaw.

--- So.2d ----                                                    Page 1
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**


Poffenbarger v. Merit Energy Co.
Ala.,2007.
Only the Westlaw citation is currently
available.
NOT YET RELEASED FOR
PUBLICATION.
        Supreme Court of Alabama.
   Patricia POFFENBARGER and Michael
              Poffenbarger
                  v.
    MERIT ENERGY COMPANY and
              David Hertel.
                1041707.

             May 11, 2007.


Appeal from Mobile Circuit Court
(CV-03-945).
MURDOCK, Justice.
*1 Pursuant to Rule 5, Ala. R.App. P.,
Patricia Poffenbarger and Michael
Poffenbarger, husband and wife, appeal
from a partial summary judgment entered
by the Mobile Circuit Court in favor of
Merit Energy Company ("Merit") and
David Hertel, Merit's operations
manager. We affirm.


          *I. Facts and Procedural History*

In 1955, oil was discovered beneath the
surface of land located in and around
Citronelle, Alabama. This discovery led
to the development of what is known as the
"Citronelle oil field."

In 1995 and 1999, Merit acquired
substantial interests in the Citronelle oil
field. On August 29, 2002, a leak was
discovered in a section of one of the oil
pipelines acquired by Merit. That section
of pipeline, although located on land
adjacent to a 32-acre tract of land owned
by the Poffenbargers, ran along, and in
close proximity to, the boundary of that
32-acre tract. Oil had escaped through a
hole in the pipeline and had entered the
Poffenbargers' land. This 32-acre tract is
uninhabited woodlands and, except for
pipelines and other equipment associated
with the production of oil, is
undeveloped.[FN1]

> FN1. The record reflects that this
> 32-acre tract of land was, itself, the
> subject of an oil and mineral rights
> lease between the Poffenbargers
> and a third-party lessee.

Merit contracted with M & M Industrial
Services ("M & M") to remove the spilled
oil from the Poffenbargers' property.
After containing the oil, M & M replaced

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)

Page 2

**(Cite as: --- So.2d ----)**

the leaking section of pipeline. M & M was on-site cleaning the oil spill from August 29, 2002, through October 1, 2002. Merit spent approximately $42,000 on the initial cleanup of the Poffenbargers' property.

In November 2002, Merit's operations engineer, Laura Nofziger, informed Mrs. Poffenbarger by letter that Merit had completed its cleanup of the property. Merit admits that Nofziger's assertion to Mrs. Poffenbarger was incorrect and that oil remains on the Poffenbargers' property.

On March 21, 2003, the Poffenbargers sued Merit and Hertel, among others, asserting claims of trespass, nuisance, wantonness, and negligence. They sought "compensatory and punitive damages in an amount deemed appropriate by the jury, plus costs." Merit and Hertel filed a joint answer in which they denied the material allegations of the complaint and asserted various affirmative defenses. Later, Merit and Hertel amended their answer by adding, in further response to the Poffenbargers' punitive-damages claim, an affirmative defense that stated, in part, that "[o]n August 9, 2004, [Merit] entered into a consent agreement with the U.S. Environmental Protection Agency and pursuant to that agreement paid a fine of $78,672.00, which was in part a penalty for the spill which is at issue in

this case."

On February 11, 2005, Merit and Hertel filed a motion for a partial summary judgment as to the proper measure of compensatory damages for the contamination of real property.[FN2] In their supporting brief, Merit and Hertel noted that the Poffenbargers were seeking, as damages, the cost to remediate their property and that, according to the Poffenbargers' expert witness, the cost of that remediation was estimated to be $2,608,740.[FN3] Merit and Hertel pointed out that an appraisal of the Poffenbargers' 32-acre tract had been obtained and that the appraisal indicated a $38,628 value before the contamination ($1,200 per acre) and a post-contamination value of $32,628. [FN4]

> FN2. Merit and Hertel's motion also sought a partial summary judgment on the question of whether the Poffenbargers were entitled to recover damages for any mental anguish they may have suffered.

> FN3. In contrast, the defendants have proposed two plans for the remediation of the Poffenbargers' property. One would cost between $10,000 and $15,000; the other would cost between $40,000 and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

Page 3

$56,000.

> FN4. There was evidence that the oil spill affected only 5 of the 32 acres in the tract at issue. The change in value from $38,628 to $32,628 was based upon the assumption that the 5 contaminated acres lost all their value, while the remainder of the acreage lost no value, as a result of the spill.

*2 Merit and Hertel argued that the proper measure of damages for an injury to real property is not the cost to remediate the property, but, instead, is the diminution in the fair market value of the property resulting from the injury. Merit and Hertel asserted that, although a property owner may recover the cost of remediation if the injury to the property is "temporary" rather than permanent, the repair costs recovered cannot exceed the diminution in the fair market value of the property caused by the injury. They argued that, because the cost of remediating the Poffenbargers' property exceeded the diminution in its value, the proper measure of damages for the injury to the Poffenbargers' property was the diminution in the value of the property.

In response, the Poffenbargers argued that the leak of oil onto their property caused what Alabama cases refer to as a "temporary" injury and that, accordingly, they were entitled under Alabama law to recover the cost of restoring the real property to its predamaged condition. They also argued that the rule of law limiting damages for injuries to real property caused by pollution to the diminution in value of the property was antiquated, given the "emerging area of environmental law and pollution control," as well as the implementation of statutes and regulations seeking to limit pollution.

On August 1, 2005, the trial court granted Merit and Hertel's motion and entered a partial summary judgment in their favor. In its order, the trial court found "that there [was] no genuine issue of material fact as to [the Poffenbargers'] claim[ ] for remediation costs which exceed diminution in fair market value of the land ... and that [Merit and Hertel] are entitled to a summary judgment in their favor on [this] claim[ ] as a matter of law." FN5 The trial court held

> FN5. The trial court also entered a summary judgment in favor of Merit and Hertel on their assertion that the Poffenbargers are not entitled to mental-anguish damages. The present appeal does not involve that portion of the trial court's judgment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

"that the proper measure of compensatory damages in this action, which is based on alleged damages to [the Poffenbargers'] real property, is the difference between the fair market value of the property before and after the alleged damage, not to exceed the fair market value of the property before the alleged damage."

The trial court certified its judgment as final pursuant to <u>Rule 54(b), Ala. R. Civ. P.</u> It also certified that an immediate appeal from the judgment would materially advance the ultimate termination of the litigation because it involved a controlling question of law as to which there was a substantial ground for a difference of opinion. According to the trial court, the controlling question of law was: "[W]hat is the appropriate measure of compensatory damages for contamination to land where the remediation or clean-up costs exceed the fair market value of the land before it was contaminated?" Thereafter, the trial court amended its order nunc pro tunc, eliminating the language making the order final under <u>Rule 54(b)</u>.<u>FN6</u>

> FN6. The trial court's decision to eliminate the language making its order final under <u>Rule 54(b)</u> was appropriate. As this Court recently stated, " '[F]or a <u>Rule 54(b)</u>

certification of finality to be effective, it must *fully adjudicate* at least *one* claim or fully dispose of the claims as they relate to at least one party.' " *Scrushy v. Tucker,* [Ms. 1050564, April 12, 2006] So.2d, (Ala .2006) (quoting <u>*Haynes v. Alfa Fin. Corp.,* 730 So.2d 178, 181 (Ala.1999)</u>) (emphasis added).

Pursuant to <u>Rule 5, Ala. R.App. P.</u>, the Poffenbargers petitioned this Court for permission to appeal from the trial court's partial summary judgment. This Court granted the Poffenbargers' petition.

*II. Standard of Review*

**\*3** A summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. <u>Rule 56, Ala. R. Civ. P.</u> We review the trial court's ruling on a motion for a summary judgment de novo. <u>Bruce v. Cole, 854 So.2d 47, 54 (Ala.2003)</u>. In the present case, our review is de novo for the additional reason that the material facts are undisputed and the only issue presented involves a pure question of law. *See* <u>*Christian v. Murray,* 915 So.2d 23, 25 (Ala.2005)</u>.

*III. Analysis*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

This appeal presents, for the first time, a fact situation that directly raises the following question: Under Alabama law, what is the general rule for the measurement of direct, compensatory damages for an injury to real property when the cost to remediate the property exceeds the diminution in the value of the property caused by the injury? The Poffenbargers assert that the proper measure of damages is the full cost to remediate the property; Merit and Hertel assert that the proper measure of damages generally is the diminution in the value of the property. We agree with Merit and Hertel, and we therefore conclude that the trial court's judgment is due to be affirmed.

Although this is the first time this Court has been confronted with a case in which the cost to remediate injured real property exceeds the diminution in its value caused by the injury, this Court, on numerous occasions, has addressed the issue of the proper measure of damages for injury to real property. Those cases, as well as the authorities on which they rely, inform our conclusion in the present case.

At issue in *Brinkmeyer v. Bethea*, 139 Ala. 376, 35 So. 996 (1904), was a trespass to real property that involved the removal from the real property of clay, dirt, and topsoil. This Court described the common-law measure of damages for injuries to real property as follows:

" 'In actions for injury to real property, when the injury is done to the realty itself, the measure of damages is the difference in the value of the land before and after the trespass, *or in some cases the amount necessary to restore the property to the condition in which it was before the trespass was committed.*'-[5] Am. & Eng. Ency. Law, 36; 3 Sedg. on Damages (8th Ed.) § 932."

139 Ala. at 378, 35 So. at 997 (emphasis added). The quoted passage from *The American and English Encyclopedia of Law* is followed in that Encyclopedia by a footnote explaining as follows: "Where the cost of putting the premises in the same condition in which they were before the trespass exceeds the increased value thereby added to the land, the depreciation in value of the land will usually be held to be the measure of damages." 5 *American and English Encyclopedia of Law* 36 n. 1 (John Houston Merrill ed., 1888). Section 932 of *Sedgwick on Damages,* the other source upon which this Court relied in *Brinkmeyer,* similarly states:*4 "The general principle upon which compensation for injuries to real property is given, is that the plaintiff should be reimbursed to the extent of the injury to the property. The injury caused by the defendant may be of a permanent nature; in such a case the measure of damages is the diminution of the market

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

value of the property. If the injury caused a total or partial loss of the land for a limited time, the diminution in rental value is the measure. One of these two measures is always applicable. *If the injury is easily reparable, the cost of repairing may be recovered. But it must be shown that the* **repairs** *were reasonable; and if the cost of* **repairing** *the injury is greater than the diminution in market value of the land, the latter is always the true measure of* **damages**. Strictly speaking, therefore, the cost of **repairs** is not the measure of **damages**, but only evidence of the amount of **damages**."

3 Theodore Sedgwick, *A Treatise on the Measure of* **Damages** § 932 (8th ed. 1891) (emphasis added; footnotes omitted).

In *Sloss-Sheffield Steel & Iron Co. v. Mitchell,* 161 Ala. 278, 49 So. 851 (1909), this Court again addressed the proper measure of damages for an injury to real property. This Court described the facts before it in that case as follows:
"This was an action for damages for the overflow of appellee's land, caused by the defendant's obstruction of the natural flow of waters in a creek or branch....
"....
"Plaintiff had a number of tenant houses upon his land and it appeared in evidence that the overflow of water invaded some of the houses, leaving in those invaded, and under all of them, and on the land, slime, mud, and debris, causing the floors to swell, and piers to settle, and the sills to rot. The plaintiff testified that he had cleaned up the land and houses, and partially repaired the injuries done to the foundations and floors of the houses. This had been accomplished at an expenditure of $300, and had so far restored the premises to their original condition that the rent received from each of the houses had been diminished by 50 cents a month only. There had been no loss of soil, nor had any part of the premises been seriously or permanently overlaid by soil deposited upon them."

161 Ala. at 280-83, 49 So. at 852-53. Discussing the appropriate measure of damages, we stated:"On these facts, without more, the plaintiff was not entitled to compensation as for the lasting detriment of his land-as for detriment not to be averted or removed by reasonable effort and expenditure. 4 Suth. Dam. §§ 1017, 1018; *Abercrombie v. Windham,* 127 Ala. 179, 28 South. 387 [ (1900) ]. So far as these injuries are concerned, the true measure of plaintiff's damages was the reasonable expense of restoring the premises and the loss of income pending their restoration with reasonable effort, expenditure, and expedition. The plaintiff was in duty bound to make reasonable effort to prevent the accumulation of damages."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

*5 161 Ala. at 283, 49 So. at 853.

In reaching its decision in *Sloss-Sheffield*, this Court relied, among other things, on 4 J.G. Sutherland, *A Treatise on the Law of Damages* §§ 1017-18 (3d ed.1904). Sections 1017 and 1018 of that treatise state, in part, as follows:

" § 1017.... Wherever, by one act, a permanent injury is done the damages are assessed once for all, even though separate parcels of land are affected, and any depreciation in the value of the property will be an element of damages according to the extent and duration of the plaintiff's estate....

" ....

" § 1018.... If the wrong consists in the destruction or removal of some addition, fixture or part of the premises the loss may be estimated upon the diminution of their value if any results, or upon the value of the part severed considered either as a part of the premises or detached.... *When occasion requires it the rule is generally announced to be that when the reasonable cost of* **repairing** *the injury by restoring the premises is less than the* **damage** *done such cost measures the* **damages***; but if the cost of restoration is more than the diminished value the latter generally determines the amount of the recovery.*"

4 *Sutherland on* **Damages** §§ 1017-18 (emphasis added; footnotes omitted).

In *Fuller v. Fair,* 202 Ala. 430, 80 So. 814 (1919), this Court stated the general measure of damages for injury to real property as follows:

"(1) If the land is taken, or its value totally destroyed, the owner is entitled to recover the market value thereof at the time of the taking or destruction, with legal interest thereon to the time of the trial. (2) If the land is permanently injured, but not totally destroyed, the owner will be entitled to recover the difference between the market value of the land at the time immediately preceding the injury and the market value of the land in its immediate condition after the injury, with legal interest thereon to the time of the trial. (3) If the land is temporarily, but not permanently,[FN7] injured, the owner is entitled to recover the amount necessary to repair the injury or to put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial."

FN7. References to "temporary" and "permanent" injury to land in many of the cases referenced in this opinion may relate not just to whether the injury naturally will abate, i.e., correct itself, within some period of time, but whether the injury is reparable by human

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

intervention. In *Sloss-Sheffield Steel & Iron Co.*, this Court stated:

"Where *permanent (that is, irreparable)* injury is done to the freehold, it would seem that the only proper measure of damages is the difference between the value of the premises with and without such injury at the time thereof....

"But where the injury is *not permanent, and the premises may be restored* to their original condition, a different rule prevails in this state."

181 Ala. at 581, 61 So. at 936 (emphasis added). In *Goodyear Tire & Rubber Co. v. Gadsden Sand & Gravel Co.*, 248 Ala. 273, 279, 27 So.2d 578, 584 (1946), this Court referenced injuries to land that are "not permanent, but reparable." One writer, taking note of Alabama decisions indicating that, "[i]f the cost of restoration plus loss of use exceeds the diminution in value of the land, ... the distinction [between permanent and temporary injuries] becomes moot because damages will be limited to the diminution in value," expressly suggests that "whether an injury is temporary or permanent for the purpose of measuring damages may be a matter of economics, determinable by comparing the cost of restoration to the diminution in value." William W. Watts, *Common Law Remedies in Alabama for Contamination of Land*, 29 Cumb. L.Rev. 37, 47 (1999).

202 Ala. at 432, 80 So. at 816.

The legal authorities on which the *Fuller* Court relied with regard to the measure of **damages** included § 7229 of *Commentaries on the Law of Negligence,* which viewed the cost of **repair** as a *limitation* on recoverable **damages:**

"Where the injury to real estate is permanent, the **damages** may be assessed on the basis of a permanent depreciation of the value of the property.... Where the injury is temporary and may be abated, the *recovery is limited* to the amount necessary to put the land in as good a condition as it was before the injury, and, in addition, compensation for any loss of use during the time it was rendered unfit for occupancy."

*66 Seymour D. Thompson, *Commentaries on the Law of Negligence* § 7229 (1905) (emphasis added; footnotes omitted).

In *Pan American Petroleum Co. v. Byars,* 228 Ala. 372, 153 So. 615 (1934), a landowner sued based on the contamination of water wells that resulted from the leakage of gasoline from tanks and pumping equipment maintained by the defendant.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

Page 9

This Court stated:

"In actions like the one now before the court the measure of damages, as a general rule, in the event the injury to the land is permanent, is the difference between the market value of the land before the injury, and its market value after the injury.

"If the injury is not permanent, but temporary, the measure of damages ordinarily is the difference between the rental value of the land before the injury and the rental value after the injury. But, in addition to a recovery for the loss in market value of the property or its rental value, the plaintiff may, in such cases, recover any special or incidental damages which he may have suffered thereby, and which proximately resulted from the wrong, whether the injury was permanent or temporary."

228 Ala. at 376, 153 So. at 619.

We addressed the proper measure of damages for injury to real property more recently in _Borland v. Sanders Lead Co., 369 So.2d 523 (Ala.1979)_. In _Borland,_ the plaintiffs owned property on which they farmed and raised cattle. A lead plant was located on adjacent property. On two occasions, the filtering process at the lead plant failed, allegedly causing an accumulation of lead particulates and sulfoxide deposits on the plaintiffs' property. Following a trial at which

evidence was presented ore tenus, the trial court entered a judgment in favor of the defendant on the basis that the defendant's compliance with the Alabama Air Pollution Control Act, Ala.Code 1975, § 22-28-1 et seq., shielded the defendant from liability, and that the plaintiffs had not been damaged because the value of their property had been increased by the presence of the lead plant.

On appeal, this Court reversed the trial court's judgment. 369 So.2d at 525. First, this Court held that compliance with the Alabama Air Pollution Act, by its plain language, did not shield the defendant company from liability. 369 So.2d at 526. Separately, as to the issue of damages, we stated:

"On remand, the issue of the proper measure of damages will undoubtedly arise. In its final decree, the trial court held that the Plaintiffs' property had increased in value as commercial property due to its proximity to the Defendant's lead plant; therefore, Plaintiffs were not allowed to recover of the Defendant. As noted earlier, such a rule would allow industries, as here, to have absolute control over the use of another's property. This clearly is not the rule for measuring damages in trespass cases. Moreover, it overlooks the fact that the appreciation factor is totally unrelated to the wrongful acts complained of.
*7 "It is often stated that the measure of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

damages in trespass cases is the difference between the value of the land before and after the trespass....

"We note, however, that this may not be a case where the damages are to be based on the difference in value before and after the trespass. This rule is subservient to the underlying proposition for measuring damages in trespass cases: The Plaintiff is ordinarily entitled to an amount which will compensate him for actual damages sustained. _Thomas v. Bank of Hurtsboro,_ 243 Ala. 658, 11 So.2d 370 (1942). In 75 Am.Jur.2d, _Trespass_ § 51, it is stated:

" 'No hard and fast principles can be laid down for the measurement of damages in this class of cases. Generally, the rules to be applied depend upon whether or not the injury is permanent or temporary in character. As is the rule generally, in the case of permanent injury, the recovery must include all damages, both past and future. The proper measure of damages is the difference between the value of the realty before the injury and its value after the injury, except where there is a total destruction, when the owner is entitled to recover the entire value.

" 'As to temporary injuries, the authorities are not in agreement as to the proper rule generally for their computation. Some courts have applied the rule in actions of trespass that the cost of restoring the property to its former condition is the proper measure of damages for a temporary injury thereto

when this is less than the diminution of the market value of the whole property by reason of the injury, but where the cost of restoration is more than the diminution in the market value, the latter is generally the true measure of damages. _In general, the measure of damages for wrongfully depriving the plaintiff of the use of his property is the rental value or the reasonable value of the use of the property during the time he is deprived thereof. Thus for a wrongful ouster of the plaintiff from a portion of his farm, damages may be awarded equal to the difference in the rental value of the farm with and without such portion.'_ (Emphasis [added in Borland].)

"....

"In conclusion, in determining the amount of damages recoverable by a plaintiff whose property has been trespassed upon, the law is flexible and the rule simple: What will compensate the plaintiff for the injury he has received? In a case such as the present one, it must first be determined whether the alleged intrusion is of a permanent nature or of a continuing nature. _If the injury is permanent,_ damages must be recovered for all time-past, present and future. The measure of damages means the difference in the fair market value of the property before and after the trespass, based on the plaintiff's use of the property or adaptability of the property to a particular use prior to the trespass.

"If the nature of the _injury is continuous_

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

Page 11

(i.e., during the tenure of the trespass), the plaintiff can recover for the use of his property or its fair rental value. (*Also, plaintiff may be able to recover the cost of restoration if this, plus rental value, is less than the diminution in value.*) Any damages for future loss must be recovered in a later action if and when a subsequent trespass occurs."

**\*8** 369 So.2d at 530-31 (emphasis added unless otherwise indicated). [FN8]

> FN8. The *Borland* Court spoke of whether "the alleged *intrusion* " is of a "permanent" nature or a "continuing" nature. It also made reference to whether the "*injury* " is permanent or continuing. We note that, regardless of whether the *trespass itself* is permanent (i.e., whether some object or substance placed upon the land by the trespasser will remain on the land permanently), the *injury* to the land may be either "permanent" or "temporary." If the *injury* is permanent, the rule of damages described in the penultimate paragraph of the above-quoted passage is applicable; if the *injury* is temporary, the rule of damages described in the last-quoted paragraph would be applicable.

Intermediate appellate court decisions from this State also have addressed the measure of damages for injury to real property. In *Jackson v. Bohlin,* 16 Ala.App. 105, 75 So. 697 (1917), the plaintiff sought damages for trespass to his property. The Court of Appeals stated the measure of damages for injury to real property as follows:

" 'In actions for injury to real property, when the injury is done to realty itself, the measure of damages is the difference in the value of the land before and after the trespass, or in some cases the amount necessary to restore the property to the condition in which it was before the trespass was committed.'

"Where the injury is such as may be remedied by restoring the property to its condition when the trespass was committed, *and the cost of restoring property is less than the depreciation in the value of the land,* and the wrong is not attended with such circumstances of aggravation as to authorize the imposition of exemplary damages, and consequential damages are not recoverable in the action under the principles hereinafter stated, the cost of restoring the property is the measure of damages."

16 Ala.App. at 108, 75 So. at 700 (emphasis added; citations omitted).

In *City of Birmingham v. Kircus,* 19

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

Ala.App. 614, 99 So. 780 (1924), the defendant appealed a judgment in the plaintiff's favor in an action by the plaintiff to recover for damage allegedly caused by the defendant's construction and maintenance of sewers and drains. In addressing the measure of damages for injuries to real property, the Court of Appeals stated:

"When the damage caused by the erection of a dam or sewer diverting or concentrating the water from its natural flow is recurring, the right of action for each recurring injury is in the owner of the land at the time the injury results. Where the injury is permanent, by a casual or recurrent overflow of water on land, the measure of damages is the difference between the market value of the land with and without the injury at the time thereof. But in cases of temporary or occasional injuries, *and where the damage may be repaired at less costs than the diminution in value,* the measure of **damages** is the costs of restoring the land to its former condition."

19 Ala.App. at 618, 99 So. at 784 (emphasis added; citations omitted).

In addition to the foregoing, several legal treatises indicate that the measure of damages for abatable injuries to real property generally is limited by the diminution in the value of the property caused by the complained-of injury. In 25 C.J.S. *Damages* § 135 (2002), we find the following statement:

"Where the injury to real property is merely temporary, or where the property can be restored to its original condition, the measure of **damages** may be, or should include, the cost of **repairs** or restoration, as where the injury is susceptible of remedy at a moderate or reasonable expense and the cost of restoration may be shown with reasonable certainty, or where the cost of restoration is less than the diminution in the value of the property....

*9 "The cost of restoration, however, cannot be adopted as the measure of damages where the cost of restoring the property would exceed the value thereof in its original condition, or the depreciation in the value thereof, or the actual damage sustained by plaintiff, or where restoration is impracticable."

(Footnotes omitted.) Similarly, 22 Am.Jur.2d *Damages* § 265 (2003) states:"Most courts agree that when the injuries to real estate are found to be temporary or reparable, the diminished market value of the property will not be used as the measure of recovery. For the purposes of measuring **damages** for injury to real property, a diminution in value may be determined by the cost of **repairing** the **damage**, provided that that cost does not exceed the former value of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

Page 13

the property and provided also that the **repairs** do not enhance the value of the property over what it was before it was **damaged**.

" ....

"Along with decisions stating that restoration cost should be awarded only if it is less than the difference in the value of the property before and after the injury, some authorities hold that the measure of damages is either the diminution in the rental value unless the land can be restored to its former condition for a lesser sum, or it is the [diminution in] rental value plus the cost of restoration where this is less than the depreciation in the value of the premises."

(Footnotes omitted.)

We hold that the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof. That is the measure of damages to be applied in the present case. In so holding, we need not determine whether the injury to the Poffenbargers' property is more appropriately termed "permanent" or "temporary"; regardless of which term is applied, the measure of damages would be the same because the cost to remediate the property exceeds the diminution in

the value thereof. [FN9]

FN9. In deciding the issue presented in this case-the measure of direct, compensatory damages generally recoverable for injury to real property-we are not presented with, and we do not intend to address, the question whether this rule admits of any exceptions. *See generally, e.g.,* Christopher E. Brown, Comment, *Dump It Here, I Need the Money: Restoration Damages for Temporary Injury to Real Property Held for Personal Use,* 23 B.C. Envtl. Aff. L.Rev. 699 (1996) (citing authorities supportive of the proposition that compensatory damages may be awarded for loss of value personal to a landowner where the diminution in market value would not fully compensate the landowner for his or her loss, and that such recovery would not be inconsistent with the principles prohibiting awards that constitute economic waste or windfalls to the recipient). *See also Restatement (Second) of Torts* § 929 cmt. b (1979) (noting that, if the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, damages are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

measured only by the difference between the value of the land before and after the harm, "unless there is a reason personal to the owner for restoring the original condition"). The Poffenbargers do not advance any such exception. Nor do they argue that the diminution in the fair market value of the land as the appropriate measure of damages should yield to the cost of remediation as the appropriate measure in cases where the latter is not disproportionate to the former.

The Poffenbargers argue that "[l]and ... is unique, non-fungible, and irreplaceable," Poffenbargers' brief at 43 (citing *Downing v. Williams,* 238 Ala. 551, 554, 191 So. 221, 222-23 (1939) (noting that " 'a specific tract [of land] is unique and impossible of duplication by the use of any amount of money' ")), and, accordingly, that the "transient 'fair market value' of land" should not be all that stands between the land and its destruction. The Poffenbargers also argue that "compensatory **damages** should make the innocent victim whole, while polluters should have a disincentive to pollute," Poffenbargers' brief at 49, and that the rule of law affirmed here today will provide no incentive to potential polluters to act responsibly in

maintaining and **repairing** their systems and equipment because it could be cheaper to take the risk that, if sued, they might have to pay a landowner no more than the market value of affected land.

**\*10** We are not unsympathetic to the concerns reflected in the Poffenbargers' arguments. Compensatory damages should indeed be adequate to make the victim whole. As this Court noted in *Borland,* the "underlying proposition for measuring damages in trespass cases [is that] [t]he [p]laintiff is ordinarily entitled to an amount which will compensate him for actual damages sustained." 369 So.2d at 530. Awarding money **damages** in an amount many times over the actual value of the land at issue, however, may not serve the end of making the victim whole as much as it raises the specter of a windfall to a victim who, in many cases, will have little or no incentive to spend those moneys to **repair** land that, even upon full remediation, will be worth only a small fraction of the money so expended. The rule we apply today, by definition, serves to make victims of pollution whole, at least in an objective or pecuniary sense, without allowing for economic waste.

What the rule we apply today admittedly does not do, however, is address intangible or subjective loss that may accompany the contamination or other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

injury to a specific tract of land. In some cases, this rule also admittedly will not provide a disincentive to polluting another's land. In these respects, we note that the <u>Rule 5</u> question before us is limited to the general, <u>FN10</u> common-law measure of direct, compensatory damages. We do not have before us the separate questions of consequential and punitive damages. Nor do we have before us the question whether and under what circumstances the separate remedy of injunctive relief may be available to require a trespasser to remove objects or substances tortiously placed on the affected land. <u>FN11</u> We also note that a variety of environmental laws have been adopted by our national and state legislatures.<u>FN12</u>

FN10. As already noted (*see* note 9, *supra* ), we do not have before us the question whether this general rule admits of any exceptions. Moreover, we do not have before us the separate question of punitive damages, or for that matter any question regarding consequential or incidental damages.

FN11. "Trespass is both a legal action and an equitable action...." <u>*Storey v. Patterson,* 437 So.2d 491, 493-95 (Ala.1983)</u> (recognizing

that, in those cases where an injury to real property is such that pecuniary compensation is inadequate, " 'a court of equity will interfere and award an injunction to prevent such injuries' " (quoting <u>*Smith v. Morris,* 181 Ala. 279, 281, 61 So. 276, 281 (1913)</u>, citing <u>*Hooper v. Dora Coal Mining Co.,* 95 Ala. 235, 10 So. 652 (1892)</u>)). In an appropriate case, the equitable remedy of an injunction can be an appropriate form of relief by which a thing or a substance tortiously placed on another's land can be removed or by which an injury to property otherwise is corrected and the property restored to its pre-trespass condition. *See* <u>*West Town Plaza Assocs. v. Wal-Mart Stores, Inc.,* 619 So.2d 1290, 1295-98 (Ala.1993)</u>; <u>*Alabama Power Co. v. Drummond,* 559 So.2d 158, 162-63 (Ala.1990)</u> (Houston, J., dissenting). The question presented in this appeal, however, does not require us to address the availability of injunctive relief.

FN12. *See generally, e.g.,* the Clean Water Act, <u>33 U.S.C. §§ 1251-1386 (2001)</u>; the Oil Pollution Act of 1990, <u>33 U.S.C. § 2702(a) (1994)</u>; the Federal Resource Conservation and Recovery Act of 1976

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

("RCRA"), 42 U.S.C. §§ 6901-6992(k) (1994); the Clean Air Act, 42 U.S.C. §§ 7401-7671q (2003); the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675 (1994); 40 C.F.R. parts 1-1700 (2006); Ala.Code 1975, §§ 22-22-1 to 22-40A-24; Ala. Admin. Code (Alabama Department of Environmental Management), Chapter 335.

The Poffenbargers also argue that measuring their compensatory damages by the diminution in value of their real property will, in effect, facilitate a taking of their property without their consent in violation of § 23 of the Alabama Constitution of 1901. Among other things, § 23 prohibits the "taking of private property for private use without the owner's consent." Section 23, however, is a limitation on governmental action, not private action, and therefore is inapplicable to the present case. See id.; Gober v. Stubbs, 682 So.2d 430, 433 (Ala.1996) (The power of eminent domain "is a power inherent in every sovereign state. Section 23 merely places certain limits on the exercise of the power of eminent domain.").

It is true, as the Poffenbargers point out, that this Court held in Borland that

allowing a defendant to escape payment for injuries it caused to land simply because of market factors unrelated to the defendant's tortious conduct "would permit private condemnation, which, unquestionably, is impermissible." The holding in Borland is inapposite to the present case, however. The issue in Borland was whether a plaintiff would be prevented from recovering for injury to his real property caused by the tortious actions of an adjacent landowner because additional, nontortious actions of the defendant increased the overall value of the plaintiff's real property. This Court answered that question in the negative, in effect holding that in order to determine the diminution in value of real property, one must isolate the inquiry to the effect upon the value of the property caused by the tortious conduct. The rule that we apply today is not inconsistent with Borland, does not allow a defendant to escape responsibility for injuring a plaintiff's property, and does not permit "private condemnation."

*11 Finally, the Poffenbargers argue that limiting compensatory damages in the present case to the diminution in fair market value of their real property would contravene the guaranty in § 13 of the Alabama Constitution that every person has a remedy "for any injury done him, in his lands, goods, person or reputation." We disagree. Our holding in this case

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)
**(Cite as: --- So.2d ----)**

Page 17

allows the Poffenbargers to seek a remedy in the form of damages measured by their objective, pecuniary loss.

*IV. Conclusion*

Based on the foregoing, we find that the proper measure of direct, compensatory damages for any injury to the Poffenbargers' real property is the diminution in the fair market value of that real property as a result of the alleged injury. We therefore affirm the trial court's judgment.

AFFIRMED.

COBB, C.J., and SEE, LYONS, STUART, SMITH, and PARKER, JJ., concur.
WOODALL and BOLIN, JJ., dissent.
WOODALL, Justice (dissenting).
In my opinion, this Court, in granting the Poffenbargers permission to appeal, has ignored the plain requirement of Rule 5, Ala. R.App. P., that the order appealed from involve "a controlling question of law." Consequently, I repeat what I have previously said under similar circumstances:
"Under Rule 5, Ala. R.App. P., an appeal by permission may be allowed where an 'interlocutory order involves a *controlling* question of law as to which there is substantial ground for difference of opinion.' (Emphasis added.) Here,

although the interlocutory order involves a question of law, it certainly does not involve a 'controlling' question of law. Therefore, I must respectfully dissent, because I would dismiss the appeal without prejudice."

City of Prattville v. Corley, 892 So.2d 845, 852 (Ala.2003) (Woodall, J., dissenting).

In urging this Court to grant the Poffenbargers permission to appeal, Merit stated:
"Defendants agree that an immediate appeal would materially advance the termination of this litigation and avoid future litigation. [The Poffenbargers] are likely to be more amenable to settlement if this Court affirms the trial court's order. Additionally, an affirmance would prevent litigation by other owners of oil field property having unreasonable expectations of receiving windfall awards with no requirement that the money be spent on remediation."

As I stated in *Corley,* "[w]hile [an] interest in settlement is understandable, and while pretrial settlements are to be encouraged, those factors do not make the issue presented 'controlling' for purposes of Rule 5." 892 So.2d at 852 (Woodall, J., dissenting).

BOLIN, J., concurs.
Ala.,2007.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- So.2d ----
--- So.2d ----, 2007 WL 1378333 (Ala.)                    Page 18
**(Cite as: --- So.2d ----)**


Poffenbarger v. Merit Energy Co.
--- So.2d ----, 2007 WL 1378333 (Ala.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: MAY 20,2007

**KEYCITE**

**Poffenbarger v. Merit Energy Co.,** **2007 WL 1378333 (Ala., May 11, 2007) (NO. 1041707)**
No references were found within the scope of KeyCite's citing case coverage.

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory
Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.